**In re CONVERTIBLE ROWING EXERCISER PATENT LITIGATION.**

**Misc. No. 85–14.**
**MDL Docket No. 623.**

United States District Court,
D. Delaware.

Feb. 1, 1993.

---

6. The parties agree that the appointment of the FDIC as receiver vested title as to the restrained funds in the FDIC.

Bruce M. Stargatt, of Young, Conaway, Stargatt & Taylor, Wilmington, DE (Harold J. Birch, and Alan I. Cantor, of Banner,

Birch, McKie & Beckett, Washington, DC, of counsel), for plaintiffs.

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, DE (Melvin F. Jager, and Cynthia A. Homan, of Willian Brinks Olds Hofer Gilson & Lione Ltd., Chicago, IL, of counsel), for defendant Ajay Enterprises Corp.

Neil M. Rose, Sunbeam Corp., Downers Grove, IL, for Allegheny Intern. Exercise Co.

Todd B. Serota, of Poms, Smith, Lande & Rose, Los Angeles, CA, for Rocket Industries, Inc.

Philip B. Polster, of Polster, Polster and Lucchesi, St. Louis, MO, for Roadmaster, Inc.

John J. Dempsey, of Chapin, Neal & Dempsey, Springfield, MA, for Columbia Mfg. Co.

Myron Amer, of Bauer & Amer, Mineola, NY, for Beacon Enterprises, Inc., Saw Mill River Industries, Inc.

Kenneth R. Glaser, of Glaser, Griggs & Schwartz, Dallas, TX, for Walton Mfg. Co.

Thomas J. Rossa, of Trask, Britt & Rossa, Salt Lake City, UT, for defendant Weslo, Inc.

Peter M. Sieglaff, of Potter Anderson & Corroon, Wilmington, DE, Liaison Counsel, for defendants.

Edmond Falgowski, of Dept. of Justice, Wilmington, DE (Lyn M. Schlitt, James A. Toupin, Jack M. Simmons, U.S. Intern. Trade Comm'n, Washington, DC, of counsel), amicus curiae.

## OPINION

LONGOBARDI, Chief Judge.

### I. NATURE AND STAGE OF THE PROCEEDINGS

The International Trade Commission ("ITC") action which is the subject of the current motion was filed by Plaintiff Diversified Products ("DP") in December, 1984. DP's complaint in that action alleged that Defendant Weslo committed acts constituting unfair trade practices in violation of 19 U.S.C. § 1337 by importing goods which infringed its 4,477,071 (the " '071 patent") patent. Defendant Weslo responded to that complaint by asserting, *inter alia*, that the '071 patent was invalid and not infringed. The Administrative Law Judge ("ALJ") held that the '071 patent was invalid because it was anticipated and obvious in light of the prior art Beacon 3002 device and, therefore, no violation of 19 U.S.C. § 1337 had occurred. The full Commission reviewed the ALJ's conclusions and reversed on the anticipation issue but sustained the ALJ on all other grounds. *In the Matter of Certain Convertible Rowing Exercisers*, ITC Investigation No. 337–TA–212 (1985). On DP's appeal of the obviousness finding, the Federal Circuit affirmed the ITC's determination that the '071 patent was invalid for obviousness and that no violation of 19 U.S.C. § 1337 had occurred. *Diversified Products Corp. v. United States Intern. Trade Com'n*, 824 F.2d 980 (Fed.Cir.1987).

Defendant Weslo then filed a motion for summary judgment in this Court seeking preclusive effect for the ITC legal determination of patent invalidity. The motion was denied by this Court in *In Re Convertible Rowing Exerciser Patent Lit.*, 721 F.Supp. 596 (D.Del.1989), *aff'd*, 904 F.2d 44 (Fed.Cir. 1990), *cert. denied*, 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 207 (1990). In denying that motion, the Court essentially determined that neither the principles articulated in *Blonder–Tongue v. University Foundation* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)[1] nor the doctrine of "administrative res judicata" as articulated in *United States v. Utah Construction*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1549–50, 16 L.Ed.2d 642 (1965)[2] operate to prevent the re-litigation of the patent

---

**1.** In *Blonder–Tongue*, the Supreme Court indicated that when a court makes a determination on patent validity in a proceeding where the patent owner had a full and fair opportunity to litigate, the patent holder is precluded from re-litigating its validity against all others.

**2.** In *Utah Construction*, the Supreme Court applied the principles of *res judicata* to administrative agency findings.

invalidity issue. *In Re Convertible Rowing Exerciser Patent Lit.*, 721 F.Supp. at 600–03. The Court concluded, therefore, that an ITC determination under section 1337 that a patent is invalid, which is affirmed by the Federal Circuit, does not estop the District Court from adjudicating the question of the validity of the same patent under 28 U.S.C. § 1338. *Id.* at 604.

In arriving at this conclusion, this Court emphasized the fact that Congress had vested the District Court with original jurisdiction to consider patent matters under 28 U.S.C. § 1338. *Id.* at 601. We noted that under 19 U.S.C. §§ 1332(b) and 1337 the ITC has original jurisdiction only over unfair practices in import trade and, that pursuant to that jurisdiction, the ITC has the authority to determine the patent validity issue only for the limited purposes of its administration of section 1337. *Id.* at 601.[3] Accordingly, we determined that questions examined by the ITC under 19 U.S.C. § 1337 and the question the District Court examines under 28 U.S.C. § 1338 are quite different in form and substance and that "jurisdiction over unfair trade acts lies with the ITC while jurisdiction over the validity, enforceability and infringement of patents lies with the federal District Courts." *In Re Convertible Rowing Exerciser Patent Lit.*, 721 F.Supp. at 601 (citations omitted).

Additionally, in further support of its conclusion, the Court relied in part on two other considerations. First, the Court referred to the decisions of a number of other courts where it was recognized that ITC patent validity determinations did not affect the ability of the District Court to consider patent validity in cases between the same parties in the context of section 1338. *Id.* at 602.[4] Second, the Court gave favorable consideration to that portion of the legislative history apparently supporting a finding of non-preclusion as regards any legal interpretations made by the ITC concerning the U.S. patent laws in particular factual contexts. *Id.*[5] These factors, when viewed with the unequivocal statutory structure providing for a jurisdictional division between 19 U.S.C. § 1337 and 28 U.S.C. § 1338 as relates to the legal determination of a patent's validity, produced the decision that the validity of the patent in this suit was to be decided by the District Court, notwithstanding the ITC and Federal Circuit's determinations of patent invalidity.

The reach of this Court's prior decision is directly implicated by one of the motions for summary judgment presently before the Court. Particularly, Defendant Weslo essentially claims that this Court's prior opinion is expressly limited to the ITC's *legal* findings and therefore seeks partial summary judgment to prevent the re-litigation of the ITC's *findings of fact* relating to patent validity. Docket Item ("D.I.") 197. Additionally, two other motions for summary judgment are before the Court. Defendant Weslo seeks summary judgment on the grounds of invalidity and non-infringement of the Plaintiff's patent, D.I. 196, and Defendant Roadmaster seeks summary judgment on the grounds of non-infringement of its Octa–Gym device. D.I. 198. These motions were filed in the ongoing pretrial proceedings of this litigation.[6]

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when

3. We also noted that patent invalidity is merely a statutory defense rather than a regulatory duty on the part of the ITC. *Id., citing Corning Glass Works v. U.S. Inter. Trade Com'n.*, 799 F.2d 1559, 1566–67 (Fed.Cir.1986).

4. These included *Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.*, 763 F.2d 42, 45 (2d Cir. 1985); *Telectronics Proprietary Ltd.*, 687 F.Supp. 832, 846 n. 42 (S.D.N.Y.1988); *Glasstech, Inc. v. AB Kyro Oy*, 635 F.Supp. 465, 468 (N.D.Ohio 1986).

5. This Court reviewed the express language of the statute and concluded that it provided no guidance on the issue of whether ITC determinations have preclusive effect. Therefore, we then examined the legislative history for guidance. *Id.* at 602 n. 15.

6. In this Multidistrict patent infringement litigation, nine separate patent infringement actions were instituted in Districts throughout the country. The original cases and four additional cases were subsequently referred to this District by the Judicial Panel on Multidistrict Litigation. The cases are currently consolidated for pretrial proceedings.

the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of *some* factual dispute will not by itself defeat a motion for summary judgment; there must be a *genuine* issue of material fact." *Looney v. City of Wilmington,* 723 F.Supp. 1025, 1029 (D.Del.1989) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). A dispute is genuine only if a reasonable jury could return a verdict for the non-moving party. *Looney,* 723 F.Supp. at 1029. Furthermore, a dispute over facts is material only if it could affect the outcome of the suit. *Id.*

## III. DISCUSSION

A. *Applicability of Preclusion Doctrine to ITC's Factual Findings*

 The first issue the Court confronts is whether it should grant preclusive effect in a patent infringement action brought under 28 U.S.C. § 1338 to the factual findings of the ITC. The Defendants assert initially that despite our earlier decision relative to the ITC conclusions of law, D.I. 200 at 7, their motion for summary judgment should be granted and preclusive effect given to the ITC findings of fact pursuant to the Supreme Court's decision in *United States v. Utah Construction,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (holding that the fact-finding of administrative bodies are properly afforded preclusive effect in District Court action). In support of this argument, they assert that there is a recognized distinction between legal determinations and underlying findings of fact, with findings of fact not considered determinations within the meaning of 19 U.S.C. § 1337. D.I. 200 at 8, citing

*American Tel. and Tel. Co. v. ITC,* 626 F.2d 841, 842 (C.C.P.A.1980).[7] In essence, the Defendants take the position that for purposes of collateral estoppel a distinction exists between findings of fact and determinations of law and that our earlier decision relative to the ITC legal determinations does not prevent our giving preclusive effect to the agency's findings of fact. *Id.* at 7–11. The Plaintiff characterizes Defendants' current motion as merely a repackaging and revisitation of the issues this Court addressed in *In Re Convertible Rowing.* D.I. 213 at 4–9. The Plaintiff essentially contends that the distinction the Defendant draws between legal and factual determinations is of no moment. *Id.* at 10–15.

As a threshold matter, the Court rejects Plaintiff's "repackaging" argument. This is not merely a revisitation of the issue decided in our earlier opinion which related only to the preclusive effect to be afforded the ITC's legal determinations. The issue presented here relates to the preclusive effect to be afforded to the ITC's *factual findings.* This distinction between legal conclusions and findings of fact is clearly evidenced by those cases appropriately cited by the Defendants supporting the proposition that for collateral estoppel purposes, findings of fact may be given preclusive effect even if such effect cannot be given to legal determinations. *See University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 3223–24, 92 L.Ed.2d 635 (1986); *Martin v. Garman Constr. Co.,* 945 F.2d 1000 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1244, 117 L.Ed.2d 476 (1992); *Layne v. Campbell County Dept. of Social Services,* 939 F.2d 217 (4th Cir.1991); *Noyes v. Channel Prods., Inc.,* 935 F.2d 806 (6th Cir.1991); *See also, Pygatt v. Painters' Local No. 277,* 763 F.Supp. 1301 (D.N.J.1991).

---

7. The Plaintiff argues that the Defendants' reliance on *American Tel. and Tel. v. U.S. Intern. Trade Commission,* 626 F.2d 841 (C.C.P.A.1980) is misplaced because the issue there was merely whether the plaintiff lacked standing. *Id.* at 10. A review of this case arguably supports the Plaintiff's position because outside of that court's language drawing the distinction between findings of fact and legal determinations, the court does

not really treat the question. In *American Tel.,* the issue was whether a party had standing to appeal the ITC determination and the court concluded there was no standing because the party had received a favorable determination from the ITC which prevented that party from having standing to challenge findings of fact which were unfavorable. *See generally, American Tel., supra.*

To resolve this esoteric issue, the Court will review the following: (1) the policies behind the judicially-created doctrine of preclusion; (2) the Supreme Court's most recent pronouncement concerning the circumstances under which District Courts should preclude factual findings made in administrative hearings; (3) Congressional intent on the issue of the preclusion of factual findings made by the ITC pursuant to its authority under the Fair Trade Practices Act;[8] (4) the standards adopted by this Circuit as to when preclusion is applicable; and (5) the weight of authority on this issue in comparable circumstances. Additionally, the Court will assess Plaintiff's independently raised "fairness" argument.

### 1. Rationale Behind Preclusion Doctrine

■ As indicated, analysis of the critical issue here appropriately begins by examining the rationale underlying the doctrines of *res judicata* and collateral estoppel.[9] A fundamental principle of common-law adjudication embodied in the related doctrines of *res judicata* and collateral estoppel is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties. *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), *citing Southern Pacific R. Co. v. U.S.*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27–28, 42 L.Ed. 355 (1897). Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Montana*, 440 U.S. at 153, 99 S.Ct. at 973 (citations omitted). Under the principle of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Id., citing Parklane Hosiery C. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

■ The application of both doctrines is central to the purposes for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Montana*, 440 U.S. at 153, 99 S.Ct. at 973, *citing Southern Pacific R. Co.*, 168 U.S. at 49, 18 S.Ct. at 27 (other citation omitted). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial actions by minimizing the possibility of inconsistent decisions." *Montana*, 440 U.S. at 153–54, 99 S.Ct. at 973–74 (citations omitted). Absent significant changes in controlling facts or legal principles or other special circumstances, the prior resolution of issues is conclusive. *Id.* at 157–58, 99 S.Ct. at 975–76.

■ In *Utah Construction*, 384 U.S. at 421–22, 86 S.Ct. at 1549–50, the Supreme Court indicated that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." (Citations omitted). It is sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity. *See, Elliott*, 478 U.S. at 797, 106 S.Ct. at 3225; *Noyes*, 935 F.2d at 809. Giving preclusive effect to administrative factfinding serves the values underlying general principles of collateral estoppel. *Elliott*, 478 U.S. at 798, 106 S.Ct. at 3226, *citing Utah Construction*, 384 U.S. at 422, 86 S.Ct. at 1560.

Under the mandate of these common-law policy directives, preclusive effect should unquestionably be given to the findings of fact made by the ITC relative to its conclusions regarding a violation of the Fair Trade Practices Act. It is not disputed that the ITC was acting in its judicial capacity when making all of its factual findings pursuant to the

8. For a more coherent analysis, the Court treats the most recent pronouncement from the Supreme Court on the issue of administrative estoppel and Congressional intent under the Fair Trade Practices Act simultaneously at Section III (A)(2).

9. The Court notes that the question of whether the District Court should give preclusive effect to the ITC's findings of fact is one of first impression in this Circuit.

terms of the Fair Trade Practices Act. Further, as we noted in our earlier opinion, "[t]he Plaintiffs had a full and fair opportunity to adjudicate before the ITC" and that ". . . the ITC made adequate factual findings and thus indicated it grasped the technical subject matter and issues in the suit." *In re Convertible Rowing Exerciser*, 721 F.Supp. at 600.

Additionally, as was the case in our earlier opinion, *Id.* at 599, the failure to give preclusive effect in this instance to the ITC's factual findings would give rise to practical concerns integral to these doctrines. If, for instance, we were to find that the critical factual findings of the ITC should not be afforded collateral estoppel effect, we would place ourselves and the parties in the position of having to present factual evidence on the exact issue of patent validity that was already heard by the ITC and the Federal Circuit. It is precisely this type of excessive and vexatious litigation and wasting of judicial resources which is at the heart of the principles and rules associated with *res judicata* and collateral estoppel. Thus, the Court finds that the fundamental concerns favoring the application of the preclusion doctrine have been triggered by the circumstances in this action and that under the principles of *Utah Construction*, preclusion is desirable.

### 2. Supreme Court/Legislative History

■ While this conclusion squares with the wisdom of the policies supporting administrative estoppel, the Supreme Court has recently noted that "[c]ourts do not . . . have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether administrative estoppel is wise but whether it is intended by the legislature." *Astoria Fed. Savings & Loan Ass'n. v. Solimino*, — U.S. —, —, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991). However, absent some expression of Congressional intent to the contrary, it is presumed that Congress has legislated in accordance with long-standing, common-law adjudicatory principles, such as collateral estoppel. *Id.* — U.S. at — – —, at 2169–70 ("where a common-law principle is well es-

tablished, as are the rules of preclusion . . ., the courts may take it as a given that Congress has legislated with an expectation that the principle will apply *except where a statutory purpose to the contrary is evident*") (emphasis added) (citation omitted). Thus, the threshold issue here is whether the relevant statutes, 19 U.S.C. § 1337 (the Federal Trade Practices Act) and 28 U.S.C. § 1338 or their legislative histories, indicate that the rules of preclusion should not apply.

The statutes relevant to this proceeding provide no guidance as to what preclusive effect any ITC finding of fact should have. There is nothing in the language of those statutes that indicates a Congressional intent rejecting the rules of preclusion. As such, it is both appropriate and necessary for this Court to evaluate the relevant underlying legislative history in order to determine whether the ITC's factual findings should not be given preclusive effect. *In Re Convertible Rowing*, 721 F.Supp. at 602 n. 15 (citations omitted). The only possible support for a holding that the ITC's factual findings are not to be given preclusive effect is that portion of the legislative history of the Federal Trade Practices Act which states:

> The commission is not, of course, empowered under existing law to set aside a patent as being invalid or to render it unenforceable, and the extent of the Commission's authority under this bill is to take into consideration such defenses and to make findings thereon for the purposes of determining whether section 337 is being violated. . . . [I]n patent-based cases, the Commission considers, for its own purposes under section 337, the status of imports with respect to the claims of U.S. patents. *The Commission's findings neither purport to be, nor can they be, regarded as binding interpretations of the U.S. patent laws in particular factual contexts. Therefore, it seems clear that any disposition of a Commission action by a Federal Court should not have a res judicata or collateral estoppel effect in cases before such courts.*

S.Rep. No. 1298, 93rd Cong., 2d Sess. 196 (1974), 1974 U.S.Code and Admin.News 7186, 7329 (emphasis added).

In our earlier opinion finding preclusion not applicable to the ITC's legal determinations relative to patent validity, we relied in significant part on that provision of the legislative history. *In Re Convertible Rowing,* 721 F.Supp. at 602. Here we rely on this provision in support of our conclusion that the ITC's *factual* findings relevant to patent validity are indeed entitled to preclusive effect by this Court.

The Defendants assert that this language establishes by plain and unambiguous language that the concern expressed in the legislative history is aimed solely at whether legal findings can be reargued as binding interpretations of U.S. Patent laws in particular factual contexts and therefore does not relate to purely factual findings. D.I. 200 at 9. The Plaintiff argues that this language does not explicitly make a distinction between legal and factual findings. D.I. 213 at 11. Further they argue that since any determination on the issue of obviousness of a patent involves both legal and factual determinations, that the intent of the legislature must have been that none of these findings be given preclusive effect. *Id.*[10]

This Court's research reveals no instance where this language has been specifically evaluated in order to determine whether it applies to both legal and factual determinations. However, given the wording of the phrase "interpretations of ... patent laws in particular factual contexts", the Court rejects the Plaintiff's interpretation of this portion of the legislative history (that Congress must have intended that neither legal nor factual findings be given preclusive effect).

While it is clear that the ITC's *legal* findings on patent validity are "interpretations of ... patent laws in particular factual contexts",[11] it is not as clear that this language in the legislative history applies to findings of fact. Findings of fact are made by an adjudicatory entity after weighing the evidence of both parties against such factors as its relevance, its probative value and the credibility of witnesses testifying in the action before that body. The findings of fact do not necessarily constitute an application or interpretation of the relevant law in that particular factual situation.

A review of the record suggests that the majority of factual findings here do not appear to be findings made in light of various provisions of the patent laws. Rather, they appear to be factual conclusions regarding physical characteristics of the various products in question or conclusions as to when these products were made public. An illustration is the finding made by the ITC that a public demonstration was made of the Beacon 3002 device some time around 1980. D.I. 200, Appendix at A2. In essence, this finding related to dates and actual events and did not necessitate any interpretation of the U.S. patent law. *See* D.I. 218 at 10.

When viewed in the full context of the language of the legislative history, the Court concludes that giving preclusive effect to such purely factual conclusions is not prohibited by the plain language of the statutory history. It is also clear that Congress has not expressed an intent that the factual findings made by the ITC in the context of making an unfair trade practices determination are not binding on federal District Courts in the context of determining the validity of a patent pursuant to 28 U.S.C. § 1338.[12]

---

10. Defendant Weslo responds that given the changes that have occurred in the judicial review of ITC determinations that these comments in the legislative history are no longer relevant. D.I. 217 at 7–9.

The Court finds no precedent lending support to Defendant Weslo's assertion that this language in the legislative history is no longer applicable. *See Tandon Corp. v. U.S. Intern. Trade Com'n,* 831 F.2d 1017, 1019 (Fed.Cir.1987); *Baltimore Luggage Co. v. Samsonite,* 727 F.Supp. 202, 206–07 (D.Md.1989).

11. In reaching its legal conclusions as to unfair trade practices when a patent is at issue, the ITC must look to the facts of the case before it and apply appropriate legal standards in reaching its conclusions on patent validity.

12. The question remains, however, whether our determination that such factual findings are precluded from being re-litigated in this Court effectively renders the ITC's legal determination of patent validity preclusive. Such "effective preclusion" would have the practical impact of negating our earlier conclusion as to the non-binding nature of the ITC's legal determinations. It is our conclusion that the decision here would not necessarily result in such "effective preclusion."

This conclusion is reinforced by other relevant portions of the legislative history. Specifically, the legislative history of the Fair Trade Practices Act reveals that Congress was made aware that judicially affirmed ITC findings would likely be given preclusive effect[13] and if Congress intended otherwise, it should have adopted specific language that would require courts to give ITC findings non-binding effect. Trade Reform Action of 1973, Hearings Before The Committee on Finance of the United States Senate, 93rd Congress, 2d Sess., 1999–2013 at 2002.[14] Congress adopted no such language in the statute and, in fact, the statute itself is silent on the issue of preclusion.

This Court finds Congress' failure to adopt any proposals or include specific language in section 1337 clearly manifesting an intention to have ITC findings be non-binding extremely indicative of its intent *not* to disturb the common-law presumption of preclusion. In essence, the legislative history reflects that at a minimum Congress evaluated the question of whether to have the statute express a preference that judicially affirmed ITC findings be given non-binding effect and chose not to include such a preference in the express language of the statute. *Cf. JSK v. Hendry County School Bd.*, 941 F.2d 1563, 1569 (11th Cir.1991) (post *Astoria* case where Court found that Congress deliberately removed deference to Education for All Children Handicapped Act (EACHA) administrative hearings, thereby demonstrating Congress' intention to give them no preclusive effect).[15] As such, consistent with the principles enunciated by the Supreme Court in *Astoria,* this Court presumes that Congress legislated in accordance with the common-law rules favoring preclusion.

### 3. Legal Standards

Having reviewed the primary policy justifications why preclusive effect should indeed be given to the ITC's factual findings and having found no Congressional intent for re-

**13.** At the time Congress was considering this legislation, there was significant authority that C.C.P.A. factual findings would be given binding effect. *See, e.g., Blonder–Tongue, supra* (patent validity determinations should be given preclusive effect); *Flavor Corp. of America v. Kemin Industries, Inc.,* 358 F.Supp. 1114, 1119 (S.D.Iowa 1973) (citing *Libbey–Owens–Ford Glass Co. v. Shatterproof Glass Corp.,* 165 USPQ 335, 336 (E.D.Mich.1970) (court in a trademark infringement case found that issues and questions of fact which were actually litigated and determined by the C.C.P.A. were conclusive in the action before it).

**14.** During legislative hearings before the United States Senate Committee on Finance, Harvey Kaye, a recognized patent attorney for 17 years testified that:

... decisions rendered by the Court of Customs and Patent Appeals [Federal Circuit now], when appeals are taken to it from section 337 proceedings, may become binding in a subsequent action in the Federal district courts, for example in an infringement action.... We assume that this result is not desired, and we have, therefore, included in our statement suggested language for the event that this committee does not desire the Federal Courts in a subsequent infringement action be bound by an appeal to the Court of Customs and Patent Appeals.

Trade Reform Action of 1973, Hearings before The Committee on Finance of the United States Senate, 93rd Congress, 2d. Sess., 1999–2013 at 2002. Kaye and his partner then proposed language in their statement that would have amended the proposed legislation to avoid this result:

If this collateral estoppel or res judicata is not intended then we believe the amendments of section 337 should contain language comparable to the following:

To the extent the federal district courts have original jurisdiction over any subject matter involved herein, decisions of the C.C.P.A. shall not be held to be res judicata or collateral estoppel.

*Id.* This proposal was rejected by Congress.

**15.** In that case, the legislative history indicated a specific proposal that the findings of fact of a State administrative agency be conclusive in any Court of the United States if supported by substantial evidence. However, that proposal was rejected and in the express language of the statute Congress provided that any party aggrieved by the *findings* and *decisions* rendered in the due process hearing or the State administrative review can bring a civil action in which the court shall make an *independent decision* based on the preponderance of the evidence. *JSK,* 941 F.2d at 1569 (emphasis added) (citations omitted). *Accord, Brooks v. Sulphur Springs Valley Elec. Co-op.,* 951 F.2d 1050, 1055 (9th Cir.1991) (post-*Astoria* decision where the Court granted the administrative agency's findings of fact preclusive effect where the relevant statute contained no suggestion that state administrative decisions did not deserve preclusive effect), *cert. denied,* — U.S. —, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992).

jecting the application of the rules of preclusion, the Court next considers whether the legal standards for precluding the re-litigation of the factual findings of the ITC, subsequently affirmed by the Federal Circuit, have been met in this case.

■ The standard applied by the Third Circuit for applying the collateral estoppel doctrine is that when an issue of fact or law is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment of a prior tribunal, that determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *N.L.R.B. v. Yellow Freight Systems, Inc.,* 930 F.2d 316, 319 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 78, 116 L.Ed.2d 51 (1991); *See also, Martin,* 945 F.2d at 1004, citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

While it is not disputed that the facts relating to patent validity were actually litigated by the parties before the ITC, the parties vehemently dispute the notion that the ITC's findings constitute "a determination by a valid and final judgment." [16] The Plaintiff for the most part argues that be-

cause the ITC did not have jurisdiction to make a valid and final legal judgment on the validity of the patent, that the facts relating to the validity of the patent were not properly before the ITC for purposes of applying the doctrine of administrative estoppel under the *Utah Construction* standard. D.I. 213 at 4–9, 12–16.[17] Defendants counter that the ITC undoubtedly had jurisdiction to make findings of fact relating to the patent validity question in its ultimate quest to determine whether the Defendants had violated the Fair Trade Practices Act. D.I. 217 at 2–3.

Unlike our prior concern regarding the ITC's jurisdiction to render binding legal conclusions on the issue of patent validity in the face of that provision granting federal District Courts original jurisdiction over questions of patent validity (28 U.S.C. § 1338), the Court has no concerns regarding the propriety of the ITC making *factual* determinations relating to patent validity. The ITC enjoys jurisdiction pursuant to 19 U.S.C. § 1337(a)(1)(A), (a)(1)(B)(i) and (g)(1) to assess whether the importation of certain products constitutes a violation of the Fair Trade Practices Act. A relevant part of that inquiry is to evaluate whether patents are valid or infringed. The findings of fact underlying

---

**16.** The Court interprets this to simply mean that the facts sought to be precluded were actually litigated in a case that proceeded to an actual and final judgment. Here, the factual findings relating to the validity of the patent were actually litigated and the case proceeded to a final judgment on the question of whether the Defendants had committed an unfair trade practice.

**17.** The Plaintiff relies primarily on three cases in support of its arguments against preclusive effect. The Court finds the cases to be fundamentally distinguishable and thus not persuasive.

In the case most strongly emphasized by the Plaintiff, *Tidewater Oil Co. v. Jackson,* 320 F.2d 157 (10th Cir.), *cert. denied,* 375 U.S. 942, 84 S.Ct. 347, 11 L.Ed.2d 273 (1963), the court's holding related to the preclusion of an issue, tort liability, not to the fact-finding underlying the agency's determination. Further, in that instance the agency was not empowered to assess the issue of tort liability while, in the instance before this Court, the ITC was empowered to assess the issue of patent validity but was limited only in that it could not make binding legal determinations on patent validity.

In *Richardson v. Phillips Petroleum Co.,* 791 F.2d 641 (8th Cir.1986), *cert. denied,* 479 U.S.

1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987), the court found that collateral estoppel was not appropriate because the issues adjudicated in the administrative hearing were substantially different than those relating to tort damages to be determined in the subsequent court action, *Id.* at 645, and that the record did not make it clear that the agency had resolved the issues before it to the same extent and in a means necessary for a tort action before the court. The case before this Court is obviously distinguishable in that in this instance the very issue before the ITC, patent validity, is now before the Court. While the ultimate issues are distinct, the issues surrounding patent validity are identical before both the ITC and this Court and must be resolved to the same extent in both.

Finally, in the portion of *Morrison–Knudson Co. Inc. v. United States,* 170 Ct.Cl. 757, 345 F.2d 833, 888 (Ct.Cl.1965) relevant here, that court determined that the administrative body's findings of fact on an issue over which it had no jurisdiction were gratuitous and that such findings did not preclude a trial de novo. As noted, in this instance, the ITC had jurisdiction to consider the issue of patent validity in the context of determining whether an unfair trade practice had occurred and, therefore, its findings of fact on that issue were by no means "gratuitous."

the ITC's patent validity conclusion relate directly to a recognized defense under the Unfair Trade Practices Act of which the ITC is expressly authorized to consider in making its ultimate determination.[18] The issue of patent validity in the context of determining whether the Fair Trade Practices Act had been violated was properly before the ITC and accordingly it had jurisdiction to consider factual evidence on that issue.

For purposes of collateral estoppel, therefore, the ITC's factual findings relative to the issue of patent validity constitute findings "essential" to the ultimate determination over which it does have jurisdiction (whether an unfair trade practice has occurred).[19] The Plaintiff does not argue or challenge in any of its submissions to this Court that the ITC's factual findings relating to the validity of the patent were not essential to its ultimate determination that the Defendants had not committed a violation under the Fair Trade and Practices Act.

Because the Court concludes that the factual findings relating to the validity of the patent were actually litigated by the parties before the ITC, because those facts were determined in the context of the ITC's final and valid judgment concerning unfair trade practices and because those factual findings were essential to that judgment, the standards for the application of collateral estoppel have been met in this case.

### 4. The Weight of Authority

■ Both parties have cited numerous cases from outside this Circuit in support of their respective positions regarding the applicability of the preclusion doctrine to the ITC's factual findings. The Court rejects as unpersuasive those decisions cited by the Plaintiff.[20] Conversely, we find our holding in harmony with the decisions of a number of other courts cited by the Defendants which gave preclusive effect to the factual findings of administrative agencies even though preclusive effect was not given to the relevant legal conclusions reached by those agencies.[21] *See, e.g., Martin v. Garman Constr. Co.,* 945 F.2d 1000 (7th Cir.1991); *Layne v. Campbell County Dept. of Social Services,* 939 F.2d 217 (4th Cir.1991); *Noyes v. Channel Prods., Inc.,* 935 F.2d 806 (6th Cir.1991); *Pygatt v. Painters' Local No. 277,* 763 F.Supp. 1301 (D.N.J.1991).[22]

Moreover, our conclusion favoring the preclusion of the ITC's factual findings is consistent with the position established by the Restatement of the Law 2d as regards "intermediate" or "evidentiary" facts. While noting that there is scattered support for the position that a factual determination will not be afforded preclusive effect if it relates to an evidentiary rather than an ultimate fact, the Restatement has rejected the distinction as undesirable:

> ... even if a fact is categorized as evidentiary, great effort may have been expended

**18.** See *supra,* note 3.

**19.** Courts have consistently emphasized the necessity of the administrative agency's findings to its ultimate judgment when determining whether such findings should be given preclusive effect. *Trustees of Colorado Pipe Industry Pension Trust v. Howard Electric & Mechanical Inc.,* 909 F.2d 1379 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991); *West Coast Truck Lines v. American Industries, Inc.,* 893 F.2d 229 (9th Cir.1990); *N.L.R.B. v. Master Slack and/or Master Trousers Corp.,* 773 F.2d 77 (6th Cir.1985); *Rosenfeld v. Dept. of Army,* 769 F.2d 237 (4th Cir.1985); *Pantex Towing Corp. v. Glidewell,* 763 F.2d 1241 (11th Cir.1985).

**20.** See *supra,* note 17.

**21.** The Court notes that the authorities relied on by Defendants involve situations where the findings of fact or law relate directly to the ultimate determination. In this instance, the findings of fact relate to the patent validity determination which in turn relates to the ultimate determination under the Fair Trade Practices Act. The fact that these findings are a bit more removed from the ITC's ultimate legal conclusions does not in any way alter our conclusion.

Having concluded that the ITC's factual findings were essential to its ultimate determination, the Court finds this distinction of no real consequence and adopts the position set forth by the Restatement. See *infra,* text accompanying note 23, for the Restatement's position on what kinds of facts are entitled to preclusive effect.

**22.** In addition, our determination of preclusion is also consistent with the decision in *Brooks,* cited by the Court at note 15, *supra,* and *Becher v. Contoure Laboratories, Inc.,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929), cited by the Defendants. D.I. 218 at 6–8.

by both parties in seeking to persuade the adjudicator of its existence or nonexistence and it may well have been regarded as the key issue in the dispute. In these circumstances the determination of the issue should be conclusive whether or not other links in the chain had to be forged before the question of liability could be determined in the first or second action.

The appropriate question then, is whether the issue was actually recognized by the parties and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action, unless there is a basis for an exception under § 28.... [23]

Restatement 2d Judgments § 27, Comment j.

In essence, this language from the Restatement supports the conclusion that preclusive effect be given to findings which are intermediate steps in the decision-making process rather than simply "ultimate" facts.[24] Here, as noted, the fact finding by the ITC underlying the legal determination of patent invalidity was necessary for the ultimate determination regarding whether an unfair trade practice had occurred.[25] Because these factual findings represented intermediate "links in the chain" necessary to the ITC's ultimate determination, they are properly given preclusive effect.

B. *Plaintiff's "Fairness" Argument*

 Lastly, the Plaintiff has raised a sweeping "fairness" argument against the granting of preclusive effect to the ITC's factual findings. Specifically Plaintiff asserts that fairness requires de novo fact-finding on patent validity due to plain errors made by the ALJ, that there may be new evidence which was not available at the ITC, that contrary rulings in the Federal Court of Canada and the European Patent Office illustrate the error of the ITC determination, that the law of the case justifies giving the Plaintiff the opportunity to prove the anomaly of the ITC findings, and that the non-binding effect of the ITC decision all advise this Court, that it would be "grossly unfair" to deny Plaintiffs the opportunity to set the "factual record straight." Plaintiff further argues that changed circumstances or new facts or evidence not available during the first trial or hearing justify the Court's not giving the findings preclusive effect.

The Court finds the assertion that fairness requires re-litigation to be without merit. The Plaintiff chose the ITC as the forum for instituting its action. The issue of patent validity was necessarily considered there based on the evidence presented. Therefore, the relevant evidence was identical to what would be produced and presented to this Court. While we are prevented from affording preclusive effect to the determination of patent invalidity for the reasons set forth in our earlier opinion, the Plaintiff had a full and fair opportunity to present evidence on the factual issues relative to patent validity

---

23. Section 28 indicates that where an issue is actually litigated and its determination was essential to the final judgment, that re-litigation is still *not* precluded where:

(1) [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or (2) [t]he issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of laws; or (3) [a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or (4) [t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action;

the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action; or (5) [t]here is a clear and convincing need for a new determination on the issue (a) because of the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action, (b) because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of the subsequent action, or (c) because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

24. See *supra,* note 24.

25. It is clear to the Court that the issue of patent validity was recognized by the parties and the ITC at the time of the ITC proceeding.

at that earlier proceeding. To allow the facts to be re-litigated would ignore the well-established principles of collateral estoppel and frustrate the policies underlying that principle.[26]

Furthermore, Plaintiff's "fairness" claim does not meaningfully implicate any of the long-established exceptions under Restatement section 28 for not precluding re-litigation.[27] The only factor set forth in section 28 which might be implicated here is that of (2)(b) which speaks of avoiding preclusive effect if there is a change in the legal context or to otherwise avoid an inequitable administration of the laws. While the Plaintiff only alludes to possible changed circumstances, none are specifically set forth. If changed circumstances were shown to exist, not apparent or anticipated at the time of the ITC hearing, these could be brought to the Court's attention and the Court would view the ITC findings in light of these new circumstances.[28]

Finally, there is the contention that the ITC determination was erroneous in light of the determinations by the Canadian court and the European Patent Office. The Federal Circuit affirmed the ITC's findings on appeal. Moreover, even if the ITC was in error, the Supreme Court has indicated that a fact, question or right distinctly adjudged in the original action cannot be disputed in a subsequent action even though the determination was rendered upon an erroneous view or an erroneous application of law. *Montana*, 440 U.S. at 162, 99 S.Ct. at 978, *citing U.S. v. Moser*, 266 U.S. 236, 242, 45 S.Ct. 66, 67, 69 L.Ed. 262 (1924).

## IV. CONCLUSION

For all of the reasons stated herein, the Defendants' motion for summary judgment seeking preclusive effect for the ITC's findings of fact is granted.

Additionally, after a thorough and mature consideration, the Court denies the other summary judgment motions, D.I. 196, 197, as they contain genuine issues of material fact that require a trial.[29]

**26.** Furthermore, our conclusion that preclusive effect is to be afforded ITC findings of fact is not altered by the possibility in this instance that we could arrive at legal conclusions different from those made by the ITC. In giving the ITC factual findings preclusive effect, we still may reach a contrary legal conclusion on the invalidity issue, thereby creating a direct conflict with the Federal Circuit which has already reviewed those factual findings and concluded that they were supportive of the ITC legal conclusions. This prospect is somewhat troublesome but this awkward scenario could arise even if the Court were *not* to give preclusive effect to the ITC's findings of fact. See *In re Convertible Rowing*, 721 F.Supp. at 599.

**27.** See *supra*, note 23.

**28.** For example, in our earlier decision in *In Re Convertible Rowing*, 721 F.Supp. at 598 n. 6., we indicated that the evidence of the public demonstration of the Beacon 3002 first surfaced three days prior to the ITC hearing and that Plaintiff DP had argued that it did not have adequate time to prepare for this testimony. There may be grounds for re-litigation of the fact of the public demonstration if the Plaintiff is able to establish either that the evidence it now seeks to introduce was not available or that it did not have a full and fair opportunity to litigate this issue given the late emergence of this testimony.

**29.** The ITC findings of fact sought to be precluded by the Defendants only tangentially relate to the Defendants' motions for summary judgment as there are many other disputed factual issues requiring trial. Specifically, the Court finds that numerous factual disputes exist as to whether the means-plus function "attaching means" clause covers the Weslo Body Shop and the Octa–Gym as "equivalent" under 35 U.S.C. § 112. See D.I. 221 at 31–52. Additionally, notwithstanding the Court's holding on preclusion, the Court is satisfied that there will still remain issues of fact requiring trial on the question of invalidity (*i.e.*, prior art, anticipation and obviousness). *Id.* at 54–60.