**OMARK INDUSTRIES, INC.,** Appellant,

v.

**COLONIAL TOOL COMPANY, INC. and Peter Chan,** Appellee.

**Nos. 81–2216, 81–2217.**

United States Court of Appeals, Third Circuit.

Argued Feb. 2, 1982.

Decided March 17, 1982.

Rehearing Denied April 16, 1982.

Kenneth S. Klarquist (argued), Peter E. Heuser, Klarquist, Sparkman, Campbell, Leigh, Whinston & Dellett, Portland, Or., John H. Klock, Crummy, Del Deo, Dolan & Purcell, Newark, N. J., for Omark Industries, Inc.

Robert C. Faber (argued), Ostrolenk, Faber, Gerb & Soffen, New York City, for Colonial Tool Co., Inc., and Peter Chan; Harold Friedman, Kirsten, Friedman & Cherin, Newark, N. J., of counsel.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

**OPINION OF THE COURT**

WEIS, Circuit Judge.

As this country appraises its energy sources, wood burning stoves as well as traditional fireplaces have become more widely used. Devices for splitting logs into firewood have also gained in popularity.

Sensing a market, plaintiff obtained a patent on a splitting wedge that it contends was infringed by the defendants. The district court concluded that plaintiff's device was obvious. We affirm.

Omark Industries, Inc. owns the patent on a splitting wedge that it markets under the trade name "Wood Grenade." It charged Colonial Tool Co., Inc., and its sole owner, Peter Chan, with infringement. Defendants denied infringing plaintiff's patent, attacked its validity, and counterclaimed for alleged antitrust violations. After a bench trial, the district court determined that the patent was invalid because of obviousness and, in any event, was not infringed.

Omark's Patent No. 4,194,544 describes an elongated cone capable of being driven into the end of a log by blows from a maul. It has a pointed starting-end to ease penetration, and some ridges to grip the wood and prevent rebounding. Because of its conical shape, the device produces multi-directional forces that split the log along the lines of least resistance.

The Wood Grenade originated with two Omark employees who were trying to develop a powered log-splitting device. As part of their efforts, in 1977, they attached a hand-held chain saw motor to a threaded metal cone and tried to screw it into the side of a log. The tests were not successful and, in frustration, one of the employees jammed the cone into the end of the log, where it stuck. On seeing this, they put a cover on top of the cone and drove it into the log with a mallet. The log split along the path of least resistance. After further refinements in the design of the cone, a patent issued on March 25, 1980.

Under the trade name "Ram Rod," Colonial markets a wood-splitting device invented by Chan. A patent application filed by the company describes it as a multi-bladed wedge with a sharpened tip. Because of the arrangement of the blades, a cross-section of the device is cruciform. The Ram Rod is intended to split a log along particular longitudinal lines.

■ According to Omark, claim 1 of its patent is infringed by Colonial's device. At the close of plaintiff's case, the district judge granted defendants' motion to dismiss the complaint in an oral opinion from the bench.[1] Characterizing plaintiff's device as a pointed wedge, the district judge found that it was not patentable because it was obvious. In addition, he determined that, even if the Wood Grenade were patentable, defendants' Ram Rod did not infringe. The judge also refused to award counsel fees, noting that defendants were trying to patent a wedge which in his view was just as obvious. Finally, the court severed the defendant's counterclaims and ordered them administratively terminated, thereby making the judgment on plaintiff's claim final and appealable.[2]

We begin by acknowledging that a patent enjoys a presumption of validity and that the burden of proving invalidity is on those who attack it. 35 U.S.C. § 282. One of the grounds for invalidity is a finding of obviousness.

■ Much has been written about the historical background and constitutional underpinnings of the doctrine of obviousness, and we need not replow the ground so

1. In suitable cases, prompt disposition by a bench opinion at the conclusion of the evidence is to be encouraged. That procedure, however, is not as desirable in patent cases. In *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Court held that a plaintiff patentee may be estopped by a previous adverse ruling on the validity of the patent unless he can demonstrate that he did not have a fair opportunity to pursue his claim on the first occasion. A written opinion setting out the factual and legal bases for a holding of

invalidity is helpful in deciding whether a first suit meets *Blonder-Tongue* requirements.

2. We are satisfied that by "administratively terminating" the counterclaims the district court dismissed them and thus made the judgment final as to all issues in the case. We do not approve the language employed because it may lead to uncertainty as to appealability. Adherence to the terms of the Federal Rules of Civil Procedure is preferable, so as to eliminate confusion both as to finality and applicable time limitations.

thoroughly covered in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). *See also Sims v. Mack Truck Corporation*, 608 F.2d 87, 89–91 (3d Cir. 1979). For present purposes, it is enough to note that § 103 of the Patent Act of 1952 provides in part:

"A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

35 U.S.C. § 103. In reviewing the facts under § 103, we follow the Supreme Court's instruction that "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Graham v. John Deere Co.*, 383 U.S. at 17, 86 S.Ct. at 693.

As set forth in claim 1 of its patent, the elements of plaintiff's device are (1) a conical-shaped wedge; (2) pointed at the lower end; (3) striking surface at the upper end; (4) ridges to prevent the device from being ejected from the wood; and (5) conical shape exerting force uniformly throughout the log and splitting it along the lines of least resistance.

Examples of the prior art are Ober, U.S. Patent No. 4,091,851; Thackery, U.S. Patent No. 3,993,113; and Long, U.S. Patent No. 3,670,789. These patents use an engine-driven shaft to screw a pointed cone into the side of a log. Thus, pointed, conical wedges for splitting logs are present in the prior art. Indeed, plaintiff's employees were using a screw-threaded conical wedge at the time they made their "discovery."

Also included in the prior art is Polish Patent No. 48,054, in which a pointed wedge resting on a tree stump is struck by a hammer dropping along a vertical guide-bar somewhat resembling a guillotine.[3] In

addition, German Patent No. 633,270 provides for ridges on the sides of a splitting wedge to prevent it from bouncing back when it is struck with a maul. Finally, Berg, U.S. Patent No. 1,742,573, describes a gun whose tapered barrel is driven into a log with a sledge hammer. Screw threads on the barrel prevent it from being blown out of the log by the recoil.

■ The prior art thus reveals every element of plaintiff's patent. Even in combination, these features do not perform in an unexpected manner. "Rather, this patent simply arranges old elements with each performing the same function it had been known to perform...." *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976). That a wedge driven into the end of a log causes it to split was not a concept unknown before the advent of modern technology. Application of that technique has its origins in far distant ages, long before patent offices came into being.

The district court found that the level of ordinary skill in the art is quite low, and plaintiff does not dispute this appraisal. As we said in *Systematic Tool & Machine Co. v. Walter Kidde & Co.*, 555 F.2d 342, 348 (3d Cir. 1977): "The search in this branch of inquiry under 35 U.S.C. § 103 is for a hypothetical person having ordinary skill in the art to which said subject matter pertains, *i.e.*, the problem solver and not the user of the solution." We explained that, "[i]n other words, the hypothetical person skilled in the pertinent art is the mechanically skilled individual familiar with the design of devices in the industry." *Id.* at 349. In this case, the hypothetical individual is one familiar with wood-splitting wedge designs. Just as the level of skill required is not very high, neither is the prior art complex. Therefore, we are unable to say that the district court erred in concluding that the invention was obvious to one skilled in the art.

---

**3.** Although the trial judge did not attribute much weight to the Polish patent, we find it to

be a significant part of the prior art.

Nor do we find that "secondary considerations" are particularly helpful here. *Graham v. John Deere Co.*, 383 U.S. at 17–18, 86 S.Ct. at 693–94. The large number of devices sold by Omark is not unexpected in view of the size of the company and its extensive marketing facilities.[4] In any event, secondary considerations would not divert us from the conclusion to which we feel irresistably drawn after testing obviousness under the basic criteria. *See Great A & P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950).

We agree with plaintiff that simplicity in and of itself is not fatal to patentability. However, when a simple device is clearly anticipated by equally simple prior art, nothing is gained by an extended discussion of precedents which wrestle with far more complex issues. Omark's device is an example of what the Supreme Court had in mind when it said, "the improvement is the work of the skillful mechanic, not that of the inventor." *Hotchkiss v. Greenwood*, 52 U.S. 248, 267, 11 How. 248, 13 L.Ed. 683 (1851). As such, "[t]he gap between the prior art and respondent's system is simply not so great as to render the system nonobvious to one reasonably skilled in the art." *Dann v. Johnston*, 425 U.S. 219, 230, 96 S.Ct. 1393, 1399, 47 L.Ed.2d 692 (1976).

Upon review of the record, we find that the trial judge did not abuse his discretion in refusing to award counsel fees to the defendants in this litigation, since this is not an "exceptional" case. 35 U.S.C. § 285.

Since we find no error in the determination that plaintiff's patent is invalid, we will affirm the judgment of the district court.

---

**4.** In the year ending June 30, 1980, Omark Industries, Inc. had net sales of $251,212,566 which included many products other than the splitting wedge.