FUJI PHOTO FILM CO. LTD.,
Plaintiff and Counterclaim
Defendant,

v.

JAZZ PHOTO CORP. INC., Jazz Photo Hong Kong Ltd. and Jack Benun,
Defendants and Counterclaimants.

No. CIV. 99–2937(FSH).

United States District Court,
D. New Jersey.

Nov. 15, 2001.

Robert J. Rohrberger, Arthur D. Grossman, Fox & Fox, Esqs., Livingston, NJ, Lawrence Rosenthal, James J. DeCarlo, Lisa A. Jakob, Strook Strook & Lavan,

New York, NY, for Plaintiff and Counterclaimant Defendant.

Jeffrey I. Kaplan, Woodbridge, NJ, for Defendants and Counterclaimants.

### Opinion and Order

HOCHBERG, District Judge.

A lens-fitted film package (LFFP), also known as a single-use camera or a disposable camera, is an inexpensive camera preloaded with film so that the unexposed film in a roll or on a spool is on the opposite side of the lens from the film cartridge. The film is then wound back into the cartridge as it is exposed each time a picture is taken.

Between 1987 and 1990, Plaintiff Fuji Photo Film Co., ("Fuji") prosecuted numerous patent applications directed to various features of LFFPs. Fuji sought protection of its LFFP product which achieved extraordinary world-wide commercial success. Fuji alleges that it was the first to provide a commercially successful disposable camera. Among Fuji's applications were those which issued as U.S. Patent Nos. 4,890,130 and 5,063,400 (the " '130 and '400 patents," respectively). These utility patents issued from a common specification and claim combinations of features directed to a structure which permits removal of the film cartridge for processing after all of the film is exposed. Fuji also prosecuted U.S. Patent No. 4,972,649 ("the '649 patent"), which Fuji asserts was issued from a different specification, identified a different, albeit overlapping, group of inventors, and claimed three methods of assembling the disclosed LFFPs.

In February 1998, Fuji filed a complaint with the International Trade Commission ("ITC") asserting unfair competition in international trade by reason of patent infringement pursuant to 19 U.S.C. § 1337. The ITC initiated Investigation No. 337–TA–406 (entitled In re Certain Lens–Fitted Film Packages ) against twenty-seven named Respondents including Jazz Photo Corp. ("Jazz"), defendant herein. The Respondents are in the business and practice of refurbishing[1] LFFPs that had been used and from which the original film was already extracted by a film developer. The ITC referred the matter to Administrative Law Judge Paul J. Luckern (the "ALJ") who held a thirteen-day hearing that followed extensive discovery and motion practice. The ALJ rendered a 351-page finding, Final Initial and Recommended Determinations ("Findings"), that twenty-six of the Respondents (including Jazz) had infringed one or more claims of one or more of the utility patents at issue and that all 26 had infringed one or more claims of the '649 method patent. On June 2, 1999, the ITC adopted the ALJ's determinations with certain modifications not pertinent herein. The ITC issued a cease and desist order specifically prohibiting Jazz from importing, selling or otherwise dealing with the imported infringing one-time-use cameras, as well as a general exclusion order barring importations by anyone into the United States of infringing one-time-use cameras.

During the ITC investigation, Jazz offered affirmative defenses of invalidity, on the grounds of obviousness, and unenforceability, on the grounds of inequitable misconduct in prosecuting the '649 patent. The ITC, adopting the ALJ's recommendation, held that the patent was valid and enforceable.

Jazz appealed the ITC's decision to the Federal Circuit; the Circuit reversed on several grounds, but specifically affirmed

---

1. The Federal Circuit has identified the word "refurbishing" as a neutral term, not connotating either repair or reconstruction. Jazz

Photo Corp. v. International Trade Commission, 264 F.3d 1094, 1098 (Fed.Cir.2001).

the ITC on its findings that Fuji's patent was valid. and enforceable. *Jazz Photo Corp. v. ITC,* 264 F.3d 1094, 1109.

## I. History of the prosecution.

Fuji first attempted to patent the '130 patent on October 19, 1987. The '130 patent is a design patent for an LFFP. When the application was first filed, Fuji's patent attorney brought to the attention of the Examiner five British patents which had been cited in the prosecution of a corresponding British application, including British Patent No. 1,060,937 (Prontor–Werk) and British Patent No. 558,516 (Kodak). The Examiner rejected the patent application as anticipated by the teaching in Netherlands Patent No. 6708486 to Bouchetal de la Roche (the "Roche patent"). The Examiner also rejected the patent by the teaching of German Patent No. 949,324 (Brandes). Fuji thereafter filed an amended application which was again rejected as obvious based on the teaching in the Roche patent in combination with additional prior art. For a second time, Fuji amended the application, and for a third time was rejected based on the teaching in Prontor–Werk and Kodak. A third amendment was met by a fourth rejection, again on the bases of Prontor–Werk and Kodak. Finally, after a fourth amendment, Fuji was granted a Notice of Allowance by the Examiner and the application proceeded to issuance on December 26, 1989.

The amended first claim of the '130 patent issued as follows:

A lens-fitted photographic film package comprising a light-tight film case with a taking lens fitted thereto, a separate empty film cartridge having a spool therein rotatable about an axis of rotation, said film cartridge being enclosed in said light-tight film case on one side of said lens, and an unexposed rolled film with one end retained on said spool in said empty film cartridge, said unexposed rolled film being disposed on the other side of said taking lens with its outermost turn in contact with said film case, said light-tight film case having a portion disposed only on said one side of said lens in alignment with said axis and which is openable only by destroying said film case on a performed line of weakness bordering said portion, to form an opening for allowing said film cartridge to be removed.

The '130 patent therefore entails an LFFP which has only one cartridge, that receives the film as it is exposed frame-by-frame. The shift to a single cartridge reduces the cost of the LFFPs. The LFFP is designed to permit the exposed film, inside the cartridge, to be removed without the use of a darkroom, which is differs from Prontor–Werk. Finally, the LFFP has a break line that is different from break lines in other LFFPs, include the Prontor–Werk design, permitting a smaller break.

The prosecution of the '400 patent involved a similar series of rejections and amendments. The Examiner first rejected the application, filed on December 22, 1989, in reliance on the patents to Roche and Kodak. The Examiner rejected the first-amended application based on patents to Prontor–Werk and Voigtlander. The second-amended application was rejected on Prontor–Werk as well as Roche and Voigtlander. Finally, after a third amendment, patent '400 issued on November 5, 1991.

The '649 method patent application was first filed on February 22, 1989. In the prior art description of the patent, Fuji's patent attorney did not mention the Prontor–Werk, Kodak and Voigtlander patents noted by the examiner of the '130 and '400 patents. The Fuji patent attorney did,

however, identify two Japanese patents and a Netherlands patent to Bouchetal identified in the earlier prosecution of the '130 and '400 patents. In relevant part, these patents contained the same art as the omitted patents.

The patent Examiner rejected the first '649 application based on the teachings in the Roche and Harvey patents. The application was amended and eventually issued on November 27, 1990.

## II. The ALJ, ITC and Federal Circuit's Conclusions

In the proceedings before the ALJ, Jazz asserted that during the prosecution of the '649 patent Fuji's patent attorney failed to bring to the attention of the Examiner: a) prior art cited by another Examiner in the prosecution of two co-pending Fuji applications (which issued as the '130 and 400 patents), and b) the prosecution listing of these two applications. Jazz argued that Fuji's failure to disclose these two pieces of information rendered the claims of the '649 patent invalid because the '649 patent was obvious and unenforceable. Fuji contended that: the claims of the '649 patent were not invalid based on the art cited by Jazz; that such art was cumulative to art already before the Examiner in the application for the '649 patent so that the art was not "material;" that the two applications were directed to different inventions than the '649 patent so that they were likewise not material; and, that there was no evidence of an intention to deceive the Patent and Trademark Office.

The ALJ, citing *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), outlined the four factual determinations for analyzing obviousness: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the

level of ordinary skill in the art; and (4) objective evidence of nonobviousness, such as commercial success, copying, or long felt need." ALJ at 191. The ALJ also explained that the burden of establishing obviousness, under a "clear and convincing evidence" standard, rests on the accused infringer. ALJ at 192. Using these guidelines, the ALJ examined all the patents cited by the parties.

The Prontor–Werk patent, explained the ALJ, describes a disposable camera which is preloaded with film on one side, and that film is wound into a cartridge on the other side as it is exposed. ALJ at 192. The film, however, must be removed in a darkroom because the second container is not light-tight. *Id.* The ALJ also found that the Kodak patent involves having film unwound from a spool and then rewound as pictures are exposed. *Id.* As with Prontor–Werk, the film is not enclosed in a light-tight container and must be removed in a darkroom. *Id.* The Voigtlander patent involves the use of a conventional camera where film is withdrawn from the cartridge as pictures are taken and then rewound after all pictures are taken. *Id.* at 193. In addition to Prontor–Werk, Kodak and Voigtlander, the first two of which the patent examiner did not review in granting the '649 patent, the ALJ noted that Netherlands patent '486 related to a disposable camera with a preloaded roll of film and a taking spool which requires removal of the film in a darkroom, and Japanese patent 53–127934 which described a conventional camera with film loaded on one side of the lens, wound onto a take-up spool after the cover is closed, and wound back into the cartridge as pictures are taken.

The ALJ found that despite having before it the Japanese reference to a conventional camera that winds back into a cartridge and the Netherlands references to a

disposable camera with two cartridges, the Examiner decided that the '649 patent was not rendered obvious. The addition of the references not cited by Fuji, explained the ALJ, did not change the outcome since the art before the Examiner was in the other patents. *Id.* at 195. Moreover, the ALJ noted that secondary considerations such as the length of time between the Fuji patent and the Prontor–Werk patent and the commercial success of the Fuji patent weighed against obviousness. Consequently, the ALJ found that there were no grounds on which to hold the '649 patent invalid. *Id.*

The ALJ next reviewed the enforceability of the '649 patent. Jazz argued that the '649 patent was unenforceable because Fuji intentionally did not reveal all the relevant art to the Examiner. The ALJ noted that to prove inequitable conduct both materiality and intent must be demonstrated by clear and convincing evidence. *Id.* at 197. However, the ALJ found no evidence the Fuji intentionally withheld information, and thus held that inequitable conduct was not established.

The ITC adopted the ALJ's recommendations. On appeal, the Federal Circuit, reviewing the opinion under the "substantial evidence" standard, affirmed the ITC's decision. *Jazz Photo Corp.* at 1108. The court held that substantial evidence supported the ALJ's finding that the prior art, via other references, was before the Examiner. The court therefore affirmed the ALJ's finding regarding patent validity. *Id.* The court also affirmed the finding that no inequitable conduct was shown. In affirming this finding, the court elaborated on the ALJ's analysis, explaining that failure to cite cumulative references is not inequitable misconduct. *Id.* (citing *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1582 (Fed.Cir. 1991)). The Federal Circuit found that the

omitted references were cumulative, and that the omission therefore did not suffice to establish inequitable misconduct. *Id.* Moreover, the court held that Jazz had not established that Fuji intentionally withheld the reference and the absence of the references from the record was insufficient as a proof of intent. *Id.* Consequently, the court held that there was no evidence of inequitable misconduct. *Id.*

## III. Standard of Review

Pursuant to Rule 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1349 (3d Cir.1994).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. This requires the moving party to establish either that there is no genuine issue of fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See Id.* at 322–23, 106 S.Ct. 2548. Once the party seeking sum-

mary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

It is clear that if a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## IV. Discussion

■ In analyzing the prior decisions in this matter this Court is mindful of the findings and opinions rendered by the ALJ and ITC, as well as the opinion rendered by the Federal Circuit on appeal from the ITC. However, while such findings and opinions serve a persuasive value, they do not receive any deferential treatment nor do they have a preclusive effect on any findings and opinions rendered by this Court. *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed.Cir.1996). This Court therefore renders its opinion based on an independent review of the facts and law.[2]

### A. Invalidity

■ A patent is presumed valid. 35 U.S.C. § 282; *Innovative Scuba Concepts Inc. v. Feder Industries Inc.*, 26 F.3d 1112, 1115 (Fed.Cir.1994). A party challenging the validity of a patent must demonstrate invalidity by clear and convincing evidence. *Id.* A patent is invalid under 35 U.S.C. § 103 if:

[T]he differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

*Id.* Obviousness is determined the four factors laid out in *Graham v. John Deere Co.* (*Graham*): (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the art. 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (*Graham*); *Omark Industries, Inc. v. Colonial Tool Co., Inc.*, 672 F.2d 362, 364 (3rd Cir.1982). In addi-

**2.** Plaintiffs urged this Court to adopt the position advanced by Judge Longobardi of the District Court of Delaware in *In re Convertible Rowing Exerciser Patent Litigation*, 814 F.Supp. 1197 (D.Del.1993). Judge Longobardi held that while the Federal Circuit has decided that *legal* findings rendered by the ITC do not carry a preclusive effect, the same cannot be said of *factual* findings. *Id.* at 1204–05. This Court does not concur with this view. The decision in *Convertible Rowing* preceded *Texas Instruments*. The Federal Circuit in *Texas Instruments* had ample opportunity to distinguish between a factual or legal preclusive effect and did not do so. Nor is the analysis in *Texas Instruments* limited to legal findings. Consequently, this Court declines to follow *Convertible Rowing* and instead affords both the factual and legal findings of the ITC and the appeal thereof persuasive value only. *Cf. Minnesota Mining and Manufacturing v. Beautone Specialties Co., Ltd.*, 117 F.Supp.2d 72 (D.Mass.1999)(distinguishing *Convertible Rowing* as outdated and hinting that *Convertible Ruling* was effectively overturned by *Texas Instruments*).

tion, "objective indications of nonobviousness" are also considered. *Id.* Such indications include long felt need, commercial success, failure of others, copying, and unexpected results. *Id., Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 446 (Fed.Cir.1986), *cert. denied,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). A party using such objective indications must establish a nexus "between the merits of the claimed invention and the evidence offered." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1539 (Fed.Cir. 1983) (citing *Solder Removal Co. v. USITC,* 65 C.C.P.A. 120, 582 F.2d 628, 637 (Cust. & Pat.App.1978)).

The parties presented evidence of several patents regarding both disposable and conventional cameras. A number of the patents describe a disposable camera with two spools, whereby the film is collected in the second spool after it is exposed. Such are the teachings of Prontor–Werk and Netherlands patent '486. The Kodak patent describes a camera where the film is unwound and then rewound when the film is exposed, but because it is not rewound into a light tight film canister, the film must be extracted only in a darkroom. On the other hand, Japanese patent 53–127934 involves a conventional—not disposable—camera where the film is rewound into a light tight film canister.

The '649 patent describes a method of loading the film into a disposable camera whereby it is wound onto a spool and then rewound into a light-tight canister as pictures are taken and exposed. There is no need to use a darkroom when opening the camera.

■ The patent examiner found that despite the existence of the Netherlands '486 Patent and the Japanese patent 53–127934, the '649 patent was not rendered obvious. This Court agrees. The fact that the '649 patent involves a light tight canister into

which the film is rewound and does not require a darkroom sets this patent apart from the others. While one could argue that in hindsight it may seem obvious to combine the Netherlands and Japanese patents, the examination should not occur in hindsight. *Ecolochem, Inc. v. Southern California Edison Co.,* 227 F.3d 1361, 1371 (Fed.Cir.2000). In *Ecolochem, Inc.,* the Federal Circuit explained that "[t]he genius of invention is often a combination of known elements which in hindsight seems preordained." *Id.* at 1371. In examining the prior art to determine if there was a motivation to combine prior art references, the Court finds that there was no suggestion in the art or otherwise to combine the references. Plaintiff's expert testimony was not refuted on this matter. In addition, the objective factors weigh heavily against a finding that combining the prior art was obvious. The patents which Jazz asserts make the '649 patent obvious were issued in the 1960's. Fuji's applications started two decades later. Such a time lag weighs against obviousness. In addition, the commercial success enjoyed by Fuji's cameras demonstrates that had it been obvious to combine the references, it would have been done, shortly thereafter.

In sum, the evidence weighs strongly in favor of the validity of the '649 patent. Defendants are unable to proffer any arguments sufficient to overcome, by clear and convincing evidence, the statutory presumption of validity when considered by a reasonable jury. Summary judgement is therefore granted on the issue of the '649 patent validity.

**B. Inequitable Conduct**

■ Inequitable conduct is a question of equity to be decided by Court. *Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, 1190 (Fed.Cir.1993). It can only be established where the omit-

ted prior art was both material and intentionally withheld, *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed.Cir.1991), and must be demonstrated by clear and convincing evidence. *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1261 (Fed. Cir.2001). Defendants have demonstrated neither materiality nor intent.

 Jazz argues that Fuji's failure to cite the co-pending patent applications for the '130 and '400 patents and Fuji's failure to cite the Prontor–Werk, Kodak and Voigtlander patents constitute inequitable conduct. However, the co-pending applications were for utility patents which were patently distinct from the '649 method patent, and thus the non-citation of them was not inequitable. On the other hand, the patent references omitted by Fuji's attorney in analyzing the '649 patent were relevant to a determination of its patentability. Nonetheless, Fuji's attorney included other references that covered the same prior art as the omitted references, which were therefore merely cumulative. Failure to cite cumulative references is not sufficient for a finding of inequitable conduct based on withholding material prior art. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed.Cir. 1991). The Court therefore concludes that there is no clear and convincing evidence of inequitable conduct.

 Even assuming, arguendo, that the omitted references were material, the evidence of intent is so speculative that it is impossible to find it clear and convincing. Jazz argues that intent is demonstrated because Fuji cited the Prontor–Werk, Kodak and Voigtlander patents during the '130 and '400 patent prosecutions

but not during the '649 prosecution. Jazz asserts that because the omitted references were found relevant during the '130 and '400 applications, Fuji's failure to cite the references in prosecuting the '649 patent is evidence of intentional withholding. In essence, Jazz seeks to prove intent solely from an inference derived from citations used in some patent prosecutions, but not other patent prosecutions. Jazz provides no actual evidence that Fuji's prosecuting attorney intentionally withheld information. While direct evidence is not always possible, drawing a string of inferences of misconduct based on inaction, when such inaction might equally be benignly intended, can not constitute clear and convincing evidence of intentional withholding.[3] *Cf. FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1417 (Fed.Cir.1987)(holding that relying on inferences was insufficient to prove intent). Plaintiff's motion for summary judgment on the issue of equitable estoppel is therefore granted.

## V. Conclusion

There is no clear and convincing evidence by which a reasonable jury could find that the '649 patent is invalid. Likewise, there is no clear and convincing evidence that Plaintiff engaged in inequitable conduct. Summary judgment on both validity and inequitable conduct is therefore **GRANTED**. Moreover, because the antitrust counterclaims asserted by Jazz necessarily require greater proof than that required for a showing of inequitable conduct, Plaintiff's motion for summary judgment is **GRANTED** with respect to the antitrust claims. *Cf. FMC*, 835 F.2d at 1417–18. Finally, Defendants' *in limine* motion to exclude Plaintiff's expert report

---

3. The attorney prosecuting the '649 patent for Fuji destroyed his files only after two years passed from the date the patent was granted and knowing that the Patent office kept records of the important files. Based on these facts, no inference of a nefarious motive can be drawn.

is **DENIED** as moot since it pertains exclusively to the validity and enforceability of the '649 patent.

**IT IS** on this 15th day of November 2001, hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **GRANTED.**