[No. 61113-5-I.   Division One.   December 15, 2008.]

AUSTRALIA UNLIMITED, INC., ET AL., *Appellants*, v. THE
HARTFORD CASUALTY INSURANCE COMPANY ET AL.,
*Respondents*.

*James M. Beecher* and *Brent W. Beecher* (of *Law Offices of Hackett, Beecher & Hart*), for appellants.

*Jerret E. Sale*, *Matthew J. Sekits*, and *Deborah L. Carstens* (of *Bullivant Houser Bailey, PC*), for respondent Hartford Casualty Insurance Company.

*Matthew G. Johnson* and *Deborah A. Severson* (of *Law Offices of Deborah A. Severson*), for respondent Potter, Leonard & Cahan, Inc.

¶1 Cox, J. — An insurer's duty to defend arises "if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability."[1] Here, the complaint filed by Crocs, Inc., in the federal lawsuit in Colorado against Australia Unlimited (AU) alleges trade dress violations that are conceivably covered by the umbrella policy issued by The Hartford Casualty Insurance Company. Thus, Hartford had a duty to defend AU in that action. However, Hartford had no duty to defend AU either in the International Trade Commission proceeding seeking injunctive relief or the second lawsuit in Colorado by Crocs for breach of contract. We affirm in part, reverse in part, and remand.

¶2 AU, a Washington corporation, is the producer, importer, and distributor of NothinZ brand shoes. In 2006, Crocs commenced a proceeding before the United States International Trade Commission and a lawsuit in United States District Court in Colorado against AU and others. The complaints in both proceedings alleged claims for patent and trade dress infringement, among other things. AU tendered defense of both of these matters to its commercial general liability and umbrella insurer, Hartford. Hartford denied tender of both matters.

¶3 AU eventually settled both matters with Crocs. Shortly thereafter, Crocs brought a second suit in Colorado state court against AU for breach of the settlement agreement. The case was removed to federal district court. AU tendered defense of this suit to Hartford. Hartford denied this tender.

¶4 Potter, Leonard & Cahan, Inc., has served as an insurance agent to AU and its president for many years. The agency selected and sold to AU the Hartford commercial general liability (CGL) and umbrella policies at issue.

¶5 AU commenced this action in Washington against Hartford claiming breach of contract, bad faith, and viola-

---

[1] *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454 (2007) (some emphasis omitted).

tion of the state Consumer Protection Act, chapter 19.86 RCW, for Hartford's refusal to defend AU in the three proceedings. AU also sued Potter, Leonard & Cahan for negligently failing to select and sell to AU a policy with the necessary provisions to ensure defense against the three proceedings.

¶6 The trial court granted summary judgment to Hartford. It later granted summary dismissal of the claim against Potter, Leonard & Cahan.

¶7 AU appeals.

## DUTY TO DEFEND

¶8 AU argues that summary judgment was improper because Hartford had a duty to defend all three proceedings that Crocs initiated. We agree in part.

¶9 A motion for summary judgment may be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.[2] The construction of an insurance contract is a question of law.[3]

¶10 Courts construe insurance policies as contracts.[4] The court considers the policy as a whole, and gives it a " 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' "[5] Most importantly, if the policy language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none

---

[2] CR 56(c).

[3] *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

[4] *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005) (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 665, 15 P.3d 115 (2000)).

[5] *Weyerhaeuser*, 142 Wn.2d at 666 (internal quotation marks omitted) (quoting *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 427-28, 951 P.2d 250 (1998)).

exists.[6] Courts interpreting insurance policies are bound by definitions provided therein.[7]

■■■ ¶11 *Woo v. Fireman's Fund Insurance Co.*[8] recently summarized the law governing an insurer's duty to defend:

> The duty to defend "arises at the time an action is first brought, and is based on the *potential for liability*." An insurer has a duty to defend "when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." In contrast, the duty to indemnify "hinges on the insured's *actual liability* to the claimant and *actual coverage* under the policy." . . .
>
> "There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer *must* investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. Notice pleading rules, which require only a short and plain statement of the claim showing that the pleader is entitled to relief, impose a significant burden on the insurer to determine if there are *any* facts in the pleadings that could conceivably give rise to a duty to defend. Second, if the allegations in the complaint "conflict with facts known to or readily ascertainable by the insurer," or if "the allegations . . . are ambiguous or inadequate," facts outside the complaint may be considered. The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty.
>
> . . . Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and

---

[6] *Quadrant*, 154 Wn.2d at 171.

[7] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 427, 38 P.3d 322 (2002).

[8] 161 Wn.2d 43, 164 P.3d 454 (2007).

seeking a declaratory judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach.[9]

## Colorado *I*

¶12 Crocs sued AU and 10 other named defendants in the United States District Court for the District of Colorado in 2006 (*Colorado* I). The complaint alleged claims for infringement of two patents, trade dress infringement, violation of the Colorado Consumer Protection Act, and common law unfair competition. AU tendered defense of this suit to Hartford, which Hartford denied.

¶13 Under the principles of *Woo* and the authority it cites, Hartford had a duty to defend if Crocs's complaint against AU, construed liberally, alleged facts that could, if proved, impose liability upon AU within the policy's coverage.[10] Hartford is not relieved of its duty to defend unless the claim alleged in the complaint is clearly not covered by the policy.[11]

¶14 AU concedes that its underlying CGL insurance policy with Hartford contains an exclusion that applies to Crocs's claims. This appeal is therefore based solely on the duty to defend contained in the umbrella policy.

¶15 We note that it appears that Hartford made its decisions not to defend after reviewing the complaints in each of the three proceedings. Thus, neither of the two exceptions to the general rule stated in *Woo* applies to this case.

¶16 Under the terms of the umbrella policy here, Hartford agreed to pay the sums the insured became legally

---

[9] *Id.* at 52-54 (second alteration in original) (citations and internal quotation marks omitted) (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 761, 58 P.3d 276 (2002); *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000)).

[10] *See id.* at 52-53.

[11] *See id.* at 53.

obligated to pay as damages in excess of the "underlying insurance" because of "personal and advertising injury." The definitions section of the umbrella policy states that the words and phrases that appear in quotation marks in that policy follow the definitions of the underlying policy.

¶17 The phrase "personal and advertising injury" appears in quotes throughout the relevant provisions of the umbrella policy. "Personal and advertising injury" is defined in the underlying policy, in relevant part, as

> injury . . . arising out of one or more of the following offenses:
> . . . .
> f. Copying, in your "advertisement[,]" a person's or organization's "advertising idea" or style of "advertisement."[12]

"Advertisement" is defined in the underlying policy as

> the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products, or services through:
> a. (1) Radio;
>    (2) Television;
>    (3) Billboard;
>    (4) Magazine;
>    (5) Newspaper;
> b. The Internet, but only that part of a web site that is about goods, products, or services for the purposes of inducing the sale of goods, products, or services; or
> c. Any other publication that is given widespread public distribution.[13]

"Advertising idea" is defined in the underlying policy as "any idea for an 'advertisement.' "[14]

¶18 AU argues that Crocs's complaint provides notice pleading of an "advertising injury" within the scope of the policy definitions. We agree.

---

[12] Clerk's Papers at 152.

[13] Clerk's Papers at 150.

[14] *Id.*

■ ¶19 In *Superformance International, Inc. v. Hartford Casualty Insurance Co.*,[15] a United States District Court in the Eastern District of Virginia analyzed the duty to defend under the same policy language at issue here.[16] The court followed a three-part analysis to determine whether coverage existed for an advertising injury: (1) whether the insured was engaged in advertising, (2) whether the insured's alleged conduct was one of the offenses enumerated by the policy as giving rise to an advertising injury, and (3) whether the injury arose from an offense committed during the policy period and in the course of the advertising activity.[17] The same analysis is helpful here.

### Advertising

■ ¶20 Hartford does not dispute that the allegations of the *Colorado* I complaint allege "advertisement" within the terms of the policy. In stating a claim for trade dress infringement in the *Colorado* I lawsuit, Crocs stated that its "footwear, accessories, displays ***and associated marketing and sales materials*** share an overall unique look and feel that serves to identify Crocs, as their point of origin."[18] Crocs further stated that its "sales and marketing efforts center around the presentation of its footwear products whose unique appearance showcases the Crocs brand and Crocs Trade Dress."

¶21 The complaint alleged that the defendants, including AU, "***market***, import and/or sell footwear that infringes the Crocs Trade Dress." It alleged that, at the time of the complaint, AU sold NothinZ brand shoes, including clogs, "through its website, www.nothinz.com, which provides a link to 'authorized online dealers,' www.slipperstore.com

---

[15] 203 F. Supp. 2d 587 (E.D. Va. 2002).

[16] *See id.* at 590-91, 595 (" 'copying in your advertisement, a person's or organization's advertising idea or style of advertisement' ").

[17] *Id.* at 595 (citing *Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 792 (E.D. Va. 2001)).

[18] Clerk's Papers at 38 (emphasis added).

and www.ShoeBuy.com." It also alleged that "Australia Unlimited's footwear infringes . . . the Crocs Trade Dress."

¶22 In its prayer for relief, Crocs requested that the defendants pay damages for sales, revenues, and profits received or derived from the "manufacture, *marketing*, sale, offering for sale, and/or distribution of products or services" bearing any copy or colorable imitation of the Crocs Trade Dress.[19]

¶23 Read together, keeping in mind the liberal pleading standards set forth in *Woo*, we conclude that these allegations (if proved) support the conclusion that Crocs's allegations constitute "advertisement" within the terms of the policy.[20]

## Advertising Injury

¶24 AU contends that the complaint in *Colorado I* states allegations that constitute an advertising injury within the terms of the policy, giving rise to Hartford's duty to defend. We agree.

¶25 The parties allot the majority of their arguments on this topic to whether the policy's coverage of "[c]opying, in your 'advertisement[,]' a person's or organization's 'advertising idea' or style of 'advertisement'" includes coverage for trade dress infringement.

¶26 "Trade dress" is a technical term that refers to "'the total image of a product and may include features such as size, shape, color or color combinations, textures, graphics, or even particular sales techniques.'"[21] While the classic

---

[19] Clerk's Papers at 52 (emphasis added).

[20] *See also Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App. 3d 747, 754-55, 2003-Ohio-7151, 804 N.E.2d 45 (allegations in complaint that insured "'sold and marketed'" a product and confused "'buyers and potential buyers'" arguably met the policy's definition of "'advertisement'").

[21] *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1189 (11th Cir. 2002) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)); *see also Superformance*, 203 F. Supp. 2d at 596 n.5.

trade dress infringement action involved the packaging or labeling of goods, it may extend to marketing techniques and can include certain sales techniques designed to make the product readily identifiable to consumers and unique in the marketplace.[22] Trade dress is protected under section 43(a) of the Lanham Act, which prohibits any person from using a term, name, symbol or device, or any combination thereof that is likely to confuse, mistake, or deceive as to the manufacturer, origin, or description of a good or service.[23]

¶27 The court in *Superformance* considered the exact question presented here.[24] The court concluded that "the offense of trade dress infringement is properly contained within the Policy's coverage for 'copying in your advertisement, a person's or organization's advertising idea or style of advertisement.' "[25] The court reasoned that "numerous courts have concluded that trade dress infringement is included within the offense of 'misappropriation of advertising ideas or style of doing business.' "[26] The court also looked to *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*,[27] a Second Circuit decision that analyzed coverage for "copying" rather than "misappropriation" with respect to trade dress claims under a CGL policy.

¶28 In *Bigelow*, the court considered whether trade dress infringement claims triggered a duty to defend under an almost identical advertising injury provision as is at issue here.[28] The insured's alleged infringement stemmed from tea packaging with trade dress "confusingly similar"

---

[22] *Hyman*, 304 F.3d at 1189.

[23] 15 U.S.C. § 1125.

[24] *Superformance*, 203 F. Supp. 2d at 595-96.

[25] *Id.* at 596.

[26] *Id.* (quoting *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins.*, 165 F. Supp. 2d 1332, 1337-38 (S.D. Fla. 2001)).

[27] 287 F.3d 242 (2d Cir. 2002).

[28] *Id.* at 245. The policy provided coverage for " '[c]opying a person's or organization's advertising ideas or advertising style.' "

to another company's packaging.[29] The court held that the complaint sufficiently alleged an advertising injury within the meaning of the policy where it stated that the insured copied another company's packaging and displayed it in published advertisements.[30]

¶29 Here, Crocs not only made general allegations of trade dress infringement, it also specifically included in its trade dress description its "marketing and sales materials" that "share an overall unique look and feel" that serve to identify Crocs as the origin. Crocs also expressly identified AU's NothinZ brand web site as a source of infringing activities. And Crocs sought damages for AU's profits from its "marketing" of products bearing any "copy or colorable imitation" of the Crocs trade dress.

¶30 As the court noted in *Woo*, notice pleading imposes a significant burden on the insurer to determine if there are *any* facts in the pleadings that could conceivably give rise to a duty to defend. Here, taking into consideration the scope of trade dress protection, notice pleading rules, and the facts alleged against AU, we conclude that Hartford had a duty to defend in the *Colorado* I lawsuit. This conclusion is consistent with the holdings of *Superformance* and *Bigelow*.

¶31 Hartford cites to *Amazon.com International, Inc. v. American Dynasty Surplus Lines Insurance Co.*[31] and *Auto Sox USA, Inc. v. Zurich North America*[32] to argue that it does not have a duty to defend where the insured copies another's product and then portrays that product in its advertisement. Hartford's reliance on these cases is misplaced. Both involve the issue of whether ***patent*** infringements can constitute advertising injury under different policy language. The protection provided by the patent law, however, is very different from that provided to trade dress

---

[29] *Id.* at 246 n.1.

[30] *Id.* at 247.

[31] 120 Wn. App. 610, 85 P.3d 974 (2004).

[32] 121 Wn. App. 422, 88 P.3d 1008 (2004).

under the Lanham Act. A federal district court explored this point in *Dogloo, Inc. v. Northern Insurance Co. of New York*,[33] in which the insurer attempted to analogize patent law precedent to trade dress allegations:

> However, what Northern appears to overlook is that, in contrast to a claim for patent infringement—which is limited to the making, using, or selling of another's product—Section 43(a) of the Lanham Act provides a remedy for "a false designation of origin, or any false description or representation." 15 U.S.C. § 1125(a). . . .
>
> > [t]rademark or tradename infringement . . . necessarily involves advertising, or use, of the mark or name to identify the merchant's goods or services.[34]

The court in *Amazon.com* also observed a difference. The court concluded that patent infringement may constitute an advertising injury where an entity uses an advertising technique that is itself patented but noted that trademarks themselves constitute an advertising idea when they serve to promote a company's products to the public.[35] In contrast to the protection offered by patents, trade dress protection is based on marketing and advertisements. These types of intellectual property protections are not interchangeable for purposes of this analysis.

## Causal Connection

¶32 Hartford argues that even if the *Colorado* I complaint alleged an "advertising injury," it did not allege a causal connection between that "advertising injury" and Crocs's damages. We disagree.

¶33 AU's Hartford policy covers injury "arising out of one or more of the following offenses," including

---

[33] 907 F. Supp. 1383 (C.D. Cal. 1995).

[34] *Id.* at 1391 (second and third alterations in original) (quoting *J.A. Brundage Plumbing v. Mass. Bay Ins. Co.*, 818 F. Supp. 553, 558 (W.D.N.Y. 1993)).

[35] *Amazon.com*, 120 Wn. App. at 616 & n.14 (citing *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1507 n.5 (9th Cir. 1994); *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am.*, 343 F.3d 249, 258 & n.12 (4th Cir. 2003)).

"[c]opying, in your 'advertisement[,]' a person's or organization's 'advertising idea' or style of 'advertisement.' " The policy therefore requires some causal connection between the injury and the insured's advertising activity before there is coverage or a duty to defend.[36]

¶34 The phrase "arising out of" is unambiguous and has a broader meaning than "caused by" or "resulted from."[37] It ordinarily means "originating from," "having its origin in," "growing out of," or "flowing from."[38] "Arising out of" does not mean "proximately caused by."[39]

¶35 Here, Crocs's complaint in *Colorado I* shows that Crocs sought damages originating from, growing out of, or flowing from AU's advertising activities. The complaint alleged that "[d]efendants market, import, and/or sell footwear that infringes the Crocs Trade Dress," and that "[d]efendants copied the Crocs Trade Dress with the intent to trade on the goodwill developed by Crocs in establishing the Crocs Trade Dress." Crocs requested that the defendants be enjoined from all further "marketing" of any shoes that infringe the Crocs trade dress and that the defendants pay damages for offenses including "marketing" products or services that bear or use "any copy or colorable imitation of the Crocs Trade Dress."

¶36 Hartford cites *Advance Watch Co. v. Kemper National Insurance Co.*[40] for support. In that case, the Sixth Circuit held that the mere fact that the insured displayed allegedly infringing products in its advertisement was not sufficient to satisfy the causal connection requirement where the "gravamen" of the complaint against the insured

---

[36] *See, e.g., Bigelow*, 287 F.3d at 247-48.

[37] *Munn v. Mut. of Enumclaw Ins. Co.*, 73 Wn. App. 321, 325, 869 P.2d 99 (1994) (citing *Toll Bridge Auth. v. Aetna Ins. Co.*, 54 Wn. App. 400, 404, 773 P.2d 906 (1989)).

[38] *Id.* (citing *Krempl v. Unigard Sec. Ins. Co.*, 69 Wn. App. 703, 707, 850 P.2d 533 (1993)).

[39] *Id.* (citing *Toll Bridge Auth.*, 54 Wn. App. at 407).

[40] 99 F.3d 795 (6th Cir. 1996).

was that its writing instruments too closely resembled another company's writing instruments.[41] We are not persuaded by that case.

¶37 A case from the Ohio Court of Appeals exposes the flawed reasoning behind this holding of *Advance Watch*:

> Some courts have held in insurance disputes such as this one that the cause of an alleged trade-dress advertising injury is the initial copying of the trade dress, not the subsequent advertising that depicts the copied trade dress. [cites *Advance Watch* in footnote] If we were to apply this rule, the advertising-injury coverage with respect to trade dress would be illusory—the insured would always be foreclosed from meeting the causation requirement. Surely this was not the intent of the parties. The language of the insurance contract required only that the " 'advertising injury' [be] caused by an offense arising out of your business . . . and that the 'advertising injury' aris[e] out of . . . infringing upon another's copyright, trade dress or slogan in your 'advertisement.' "[42]

The court went on to apply the Ohio interpretations of the "arising out of" language, which had been defined in the same terms as adopted by Washington courts.[43]

¶38 The court in *Bigelow* also rejected the reasoning found in *Advance Watch*. The Second Circuit observed that decisions like *Advance Watch* "appear to have considered the claim against the insured rather narrowly as limited to the *initial* act of copying the claimant's trademark or trade dress, rather than more broadly as encompassing the *continuing* creation of consumer confusion by displaying the allegedly similar mark or dress in advertising."[44] The court then noted that trademark and trade dress torts are

---

[41] *Id.* at 806-07.

[42] *Westfield*, 155 Ohio App. 3d at 756 (some alterations in original) (footnote omitted).

[43] *Id.* ("The phrase ['arising out of'] has been defined to mean 'flowing from,' 'having its origin in' or 'growing out of.' The phrase indicates a requirement of a causal relationship but not one of proximate cause.").

[44] *Bigelow*, 287 F.3d at 248.

of a "continuing nature."[45] Numerous other courts have similarly rejected the reasoning of *Advance Watch*.[46]

¶39 We conclude that the three elements of the analysis set forth in *Superformance* have been met with respect to the *Colorado* I lawsuit. Accordingly, Hartford had a duty to defend AU in that lawsuit, absent an applicable exclusion.

## Exclusion

¶40 The next step in analyzing Hartford's duty to defend is to determine whether the umbrella policy contains an exclusion that clearly eliminates coverage. Hartford argues that the "personal and advertising injury" exclusion in the umbrella policy precludes its duty to defend. We disagree.

¶41 The umbrella policy contains a general exclusion that states as follows:

4. Personal and Advertising Injury

This policy does not apply to "personal and advertising injury."

EXCEPTION

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury."[47]

¶42 Hartford notes that the above exception to the exclusion of personal and advertising injury contains two parts. First, the underlying policy must be "applicable to 'personal and advertising injury.'" Hartford concedes that this condition is fulfilled here because the underlying policy contains "personal and advertising injury" coverage. This concession is well taken.

¶43 However, Hartford contends the second provision is unmet in this case. It is undisputed that parts of "personal

---

[45] *Id.*

[46] *See, e.g., AMCO Ins. Co. v. Lauren-Spencer, Inc.,* 500 F. Supp. 2d 721, 730 (S.D. Ohio 2007) ("Much of the rationale of *Advance Watch* has often been severely criticized by other courts and represents the minority view.").

[47] Clerk's Papers at 71.

and advertising injury," namely the intellectual property exclusion in the underlying policy that both parties agree applies to this case, excludes coverage by the underlying policy of the claims here.[48] Hartford argues that the words of the second part of the condition, "claims arising out of *that* 'personal and advertising injury,' " also mean that there is no coverage under the umbrella policy. Essentially, Hartford argues that advertising injury coverage in the umbrella policy is meant to follow the form of the underlying policy and serves only as excess coverage for the underlying insurance. Hartford's reading of the exception focuses on the word "that"—the umbrella policy will apply to "personal and advertising injury" if the underlying policy applies to personal and advertising injury and also to claims arising out of *that* (particular) personal and advertising injury.

¶44 AU offers a different reading of the exception, one that is more consistent with the plain language of the exception. The policy defines "personal and advertising injury" as a category of claims—specifically, the enumerated "offenses" described in the policy. Keeping this in mind, AU reads the second provision of the exception to mean that the underlying insurance must cover claims arising out of that category of offenses defined as "personal and advertising injury." Even though the underlying insurance here admittedly does not cover intellectual property claims, the underlying insurance covers *other* personal and advertising injury claims. The exception only requires that the underlying insurance be applicable to *some* claims arising out of the personal and advertising injury category. It does not say that the underlying insurance must apply to

---

[48] The underlying policy excludes

"Personal and Advertising Injury"

. . . .

(7) Arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

Clerk's Papers at 141.

"the" (specific) claim, it only states that underlying insurance must be applicable "to claims arising out of that" category.[49]

¶45 Moreover, the principles of insurance contract interpretation require that the court resolve any ambiguities in favor of the insured.[50] An ambiguity exists where the insurance policy's language is susceptible to more than one reasonable interpretation.[51] Even if we were to agree with Hartford's reading of the exclusion, the reading offered by AU, the insured, is more than reasonable. Accordingly, we conclude that the exclusion does not apply, as AU argues.

### International Trade Commission Complaint

¶46 Along with filing the above claim in federal district court, Crocs filed a complaint against AU and others in a proceeding with the International Trade Commission (ITC). AU argues that Hartford had a duty to defend in this ITC action. We disagree.

¶47 The federal judge in the *Colorado* I case stayed the action pending the resolution of the ITC complaint. According to AU, the court elected to stay the lawsuit because the ITC would be required to decide many of the same infringement issues presented in the federal action, and the court understood itself to be bound by the ITC's determination. In its opening brief, AU argues that Hartford had a duty to defend in the ITC action because AU's defenses "in each of those matters was inextricably intertwined and mutually co-dependent as a matter of fact and law."

¶48 The umbrella policy provides, "With respect to . . . 'personal and advertising injury' to which this insurance applies," Hartford "[w]ill have the right and duty to defend any 'suit' against the 'insured' seeking 'damages' on account thereof." Hartford contends that it was not

---

[49] (Emphasis added.)

[50] *Am. Nat'l Fire Ins. Co.*, 134 Wn.2d at 428.

[51] *Vadheim v. Cont'l Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987).

obligated to defend AU in the ITC action because the action did not seek monetary relief. We agree.

¶49 Crocs filed its complaint with the ITC pursuant to 19 U.S.C. § 1337. In the request for relief, Crocs requested the ITC to institute an investigation, render various determinations as to its patent and trade dress claims, and issue permanent exclusion and cease and desist orders against the respondents, including AU. This complaint, even construed liberally, does not allege facts that could impose liability upon AU within the policy's coverage because it does not seek monetary damages.[52]

¶50 Moreover, the ITC does not have authority to order monetary damages under § 1337.[53] The statute provides for injunctive relief only in the form of exclusion and/or cease and desist orders.[54]

¶51 For the first time in its reply, AU argues that a federal court is bound, as a matter of res judicata, by all factual determinations made in an ITC proceeding.[55] We are not persuaded by this argument.

¶52 AU cites only to *In re Convertible Rowing Exerciser Patent Litigation*[56] for support of its res judicata argument. More recent federal case law casts doubt upon the validity of *Convertible Rowing*. For example, in *Fuji Photo Film Co. v. Jazz Photo Corp.*,[57] the district court for the District of New Jersey held that the findings and opinions of the ITC "serve a persuasive value," but "do not receive any deferential treatment[,] nor do they have a preclusive effect on any

---

[52] *See Woo*, 161 Wn.2d at 52-53.

[53] 19 U.S.C. § 1337.

[54] *Id.*

[55] Reply Br. of Appellant at 22 (citing *In re Convertible Rowing Exerciser Patent Litig.*, 814 F. Supp. 1197, 1208 (D. Del. 1993)).

[56] 814 F. Supp. 1197 (D. Del. 1993).

[57] 173 F. Supp. 2d 268 (D.N.J. 2001).

findings and opinions rendered by this Court."[58] The court expressly declined to follow *Convertible Rowing*.[59]

¶53 Even if AU is correct and federal courts are bound by res judicata to the factual determinations regarding trade dress made in an ITC proceeding, AU fails to show how this administrative proceeding falls within its policy. The proceeding is still not a "suit" for "damages."

## Colorado *II*

¶54 AU eventually settled both of the above matters with Crocs on terms that included Crocs being given the right to approve new designs to be manufactured by AU and dismissal of AU from the ITC action. The administration of the settlement agreement broke down, and Crocs sued AU for breach of the settlement agreement in Colorado state court (*Colorado* II). The case was removed to federal court.

¶55 AU alleges that Crocs has "amended [the *Colorado* II] Complaint to include trade dress allegations functionally identical to those contained in the Colorado I suit." No such complaint is in this record, and we presume no such complaint was before the trial court when it ruled on summary judgment.

¶56 The complaint for the *Colorado* II lawsuit that is in the record is Crocs's first amended complaint seeking damages for breach of contract. This complaint does not include separate allegations for trade dress infringement. This complaint does not allege that AU marketed infringing shoes, nor does it refer to AU offering sales through its web site.

¶57 Based on this record, we conclude that Hartford did not have a duty to defend the *Colorado* II action. The complaint rests on AU's material breach of the settlement agreement in "[m]anufacturing, displaying, distributing,

---

[58] *Id.* at 274 (citing *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1568 (Fed. Cir. 1996)).

[59] *Fuji Photo Film*, 173 F. Supp. 2d at 274 n.2.

offering for sale, and selling footwear . . . based on a design not approved by Crocs." Unlike the *Colorado* I complaint, which sought relief, at least in part, based on AU's "copy or colorable imitation of the Crocs Trade Dress," the *Colorado* II complaint seeks relief based on AU's use of a "design not approved by Crocs."

¶58 As explained above, the umbrella policy does not provide coverage unless the complaint alleges that the insured copied, in its "advertisement," an "advertising idea" or "style of advertisement." The *Colorado* II complaint does not allege such an injury, nor does AU point to any other relevant provisions of its insurance policies with Hartford.

## NEGLIGENCE

¶59 Potter, Leonard & Cahan argues that summary judgment dismissal of the claims against it were proper if the court concludes that Hartford had a duty to defend AU. We agree.

¶60 AU has not addressed its claims against Potter, Leonard & Cahan with respect to each individual matter discussed above (*Colorado* I and *Colorado* II, and the ITC proceeding). Because there was a duty to defend the *Colorado* I proceeding, the insurance agent is not liable in negligence. And because there was no duty to defend the other two proceedings, AU cannot show a breach of any duty by the agent. Accordingly, we affirm the trial court's summary judgment order dismissing AU's claims against Potter, Leonard & Cahan.

¶61 We affirm in part, reverse in part, and remand for further proceedings.

GROSSE and LEACH, JJ., concur.